UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jerry Slight, et al.,                                              Case No. 15-cv-664

          Plaintiffs

    v.                                                                     MEMORANDUM OPINION

Local 12, International Union United Automobile,
Aerospace and Agricultural Implement
Workers of America, et al.,

          Defendants

I.    INTRODUCTION

Before me are: (1) Defendants Local 12, International Union United Automobile, Aerospace and Agricultural Implement Workers of America ("Local 12") and International Union United Automobile, Aerospace and Agricultural Implement Workers of America's ("UAW") joint motion for summary judgment (Doc. No. 50); and (2) Defendant FCA US, LLC's ("FCA") motion for summary judgment. (Doc. No. 52).

II.    BACKGROUND

Plaintiffs are 34 employees of Defendant FCA working at the Toledo Jeep plant. (Doc. No. 1 at 3). Defendant Local 12, of Defendant UAW, is the exclusive collective bargaining representative at the Toledo Jeep plant. In 2007, Plaintiffs were hired as Temporary Part-Time employees ("TPTs"). Pursuant to the CBA, TPTs were not to be treated as *de facto* full-time employees in order to avoid full-time pay and benefits, but were instead hired for part-time work on

projects expected to be completed within 120 days. The CBA also stated that the employees were to receive preferential treatment for full-time, permanent employment when available.

Over the course of six years, Plaintiffs served under the title of TPT and received Tier I wages. Even though they were considered TPTs, Plaintiffs allege that they worked full-time hours and occasionally even overtime. Plaintiffs also allege that during this time, FCA offered permanent, full-time to others over Plaintiffs, in violation of the CBA.

In March 2013, Plaintiffs were hired as permanent, full-time employees at a Tier II wage. Unhappy with the lower wage, allegedly caused by the delay in becoming full-time employees, Plaintiffs filed grievances with the union citing the alleged CBA violations. The grievances were considered on the local level and eventually brought to the Appeals Board on the international level. In January 2014, the Appeals Board withdrew the grievances. Even though Plaintiffs and the local union representative repeatedly inquired about the status of the grievances, the local representative was not notified that the grievances had been withdrawn until October 2014. The rest of the union members were officially notified of the withdrawal at the union meeting on November 7, 2014. Plaintiffs did not appeal the decision pursuant to the internal appeals process outlined in the UAW Constitution, but instead filed suit in April 2015.

### III.   STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its

resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV.   DISCUSSION

Plaintiffs assert a hybrid Labor and Management Relations Act (LMRA) § 301 claim of breach of the CBA against FCA and breach of the duty of fair representation against the Union Defendants. Plaintiffs also allege the following claims against the Union Defendants: (1) breach of the duty of fair representation under the National Labor and Relations Act (NLRA) § 9(a); and (2) common law fraud. Defendants move for summary judgment citing Plaintiffs' failure to exhaust the internal administrative remedies available under the UAW Constitution and federal preemption of state law claims.

A.   Hybrid § 301

Generally, before seeking judicial relief on a hybrid § 301 claim against either the employer or the union, the union member must exhaust any internal union procedures available under the union constitution. *Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981); *see also Monroe v. Int'l Union, UAW*, 723 F.2d 22, 24 (6th Cir. 1983) ("If plaintiff here inexcusably failed to exhaust union appeals, the failure would bar this suit not only against the unions, but also against [his employer]."). But exhaustion is excused if:

> first, [ ] union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, [ ] the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, [ ] exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton*, 451 U.S. at 689; *see also Chapman v. United Auto Workers Local 1005*, 670 F.3d 677 (6th Cir. 2012).

The following appeals procedure, outlined in the UAW Constitution, is available for members to appeal most decisions made by the union:

3

> FIRST, to the membership or delegate body immediately responsible for the official, officer, action or decision under challenge; SECOND, to the International Executive Board, unless the appeal begins there; and THIRD, to the Convention Appeals Committee or Public Review Board, as may be appropriate.

UAW Const. art. 33, § 2(a). The "first" level is outlined in the CBA, while the "second" and "third" are detailed in the UAW Constitution. (Doc. Nos. 53-1, 53-2). The withdrawal of Plaintiffs' grievances by the Appeals Board marked the completion of the first level of internal appeal. But since Plaintiffs failed to complete the second and third levels of the procedure, as mandated by the UAW Constitution, the internal union remedies were not properly exhausted. UAW Const. art. 33, § 5. Exhaustion will be excused only if Plaintiffs are able to prove exhaustion would have been futile.

1. Adequacy of Available Remedy

As noted above, Plaintiffs completed the first step of the internal appeals procedure. Plaintiffs now contend that completing the second step would have been futile because of the delay between the time the grievance was withdrawn and the time they learned of the withdrawal. They assert that the union would have denied the appeal as untimely or, alternatively, that the company would not consider the reinstated grievance. But Plaintiffs have failed to establish any *facts* beyond their speculation to support their arguments. *See Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1039 (6th Cir. 1989) ("[A] subjective belief [is] insufficient to excuse them from at least *attempting* to utilize the procedures.").

Under *Clayton*, the procedure need only reinstate the grievance *or* award full relief. *Clayton*, 451 U.S. at 689. In this case, the UAW Constitution outlines a three step procedure for appealing decisions and refers specifically to appealing the "disposition of a grievance" as an appealable decision. UAW Constitution art. 33, § 2(a). Plaintiffs' grievances could have been reinstated on either of the two final levels of the internal appeals procedure.

In the final two steps of the internal appeals procedure, appellants may be represented by counsel. § 4(f). The second level, which Plaintiffs assert was futile to complete, requires an appeal of

4

the decision to withdrawal to the International Executive Board ("IEB") within 30 days of the time the appellant knew or should have known of the withdrawal. § 4(b)-(c).

Plaintiffs argue that since the grievance with withdrawn in January 2014, the union would have considered an appeal within 30 days of their knowledge on November 7, 2014, untimely. But even if the appeal is facially "untimely," that decision itself may be appealed directly to the IEB of the second level. (Affidavit of Rick Isaacson, Doc. No. 51-27 at 2). So, even if Plaintiffs assumption was correct, they had an opportunity to argue and present evidence, with the assistance of counsel, to establish the fact that they did not learn of the withdrawal until November 7, 2014. (Deposition of Troy Davis, Doc. No. 51-1 at 11-12). In fact, "[t]he President's Office routinely finds appeals to be timely when there is a dispute as to when the appellant was notified of the disposition of the underlying grievance." (Affidavit of Rick Isaacson, Doc. No. 51-27 at 2); *see also* (Deposition of Troy Davis, Doc. No. 51-1 at 11-12) (stating it wasn't "uncommon" to allow an appeal after this period of time). Finally, independent of the date of knowledge, the International President himself "may waive the time for filing the appeal if warranted by the circumstances." §4(d). Completing the second level of the appeals process was not futile.

Plaintiffs argue that even if they had completed the internal appeals process and had the grievance reinstated, the reinstatement itself would not be adequate to afford relief from FCA. But, as noted above, the remedy is assumed to be adequate if it would *reinstate* the grievance. *See Wagner v. Gen. Dynamics*, 905 F.2d 126, 128-29 (6th Cir. 1990); *Monroe*, 723 F.2d at 25 (citing *Clayton*, 451 U.S. at 691 n.18). Here, under the Letter of Understanding between FCA and the UAW, FCA would recognize a grievance that had been properly reinstated through the internal union procedure. (Doc. No. 51-26). Cases dealing with similar letters have held the remedy to be adequate, even if it forecloses back pay from the company, because the remedy is still available against the union. *See, e.g., Chapman*, 670 F.3d at 685-86; *Wagner*, 905 F.2d at 129 n.5; *Monroe*, 723 F.2d at 25. *Cf. Hill v. Gen. Motors Corp.*, 697 F. Supp. 1274, 1278-79 (W.D.N.Y. 1988) (finding similar contract language

5

excluding back pay to provide an inadequate remedy when union was defunct). Since Plaintiffs were able to reactivate the grievance, it is in the interest of public policy to allow the union the opportunity to privately resolve the matter if possible using the internal appeals procedure. *Clayton*, 451 U.S. at 692 ("Where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes.").

The UAW provides an internal appeals procedure through which a grievance may be reinstated even if appellants miss deadlines to appeal. By the Letter of Understanding, FCA will recognize grievances that are properly reinstated by the union and reinstate them to the level they were when withdrawn. Since Plaintiffs have failed to provide any factual basis to support their allegations that the internal appeals procedure would be inadequate to reinstate the grievance, exhaustion is not excused on the basis of this factor.

2. Hostility

Exhaustion may be excused because of hostility only if the plaintiff can prove hostility on *every* level of the internal appeals procedure. *Monroe*, 723 F.2d at 25. Here, Plaintiffs argue that the local level and the international level are hostile. But, the IEB is a completely separate board at the international level than the Appeals Board of the international level that withdrew Plaintiffs' grievances. Even so, had the IEB declined to reinstate the grievance because of any residual hostility on the international level, Plaintiffs could have appealed to the Public Review Board ("PRB"). The PRB is composed of "impartial persons of good public repute not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies." UAW Const. art. 32, § 1; *see also Wagner*, 905 F.2d at 128. Plaintiffs have not addressed the IEB or PRB at all, let alone establish facts that would support an argument of hostility on the second and third levels of the internal appeals procedure.

3. Unreasonable Delay

Plaintiffs assert that the ten month delay between the time of the withdrawal and when they became aware of the withdrawal is unreasonable. But the "unreasonable delay" factor does not ask how much time that *has* passed, but how much time *will* pass for the appellant to complete the internal appeals process. *See Wagner*, 905 F.2d at 129 ("We do not view exhaustion of this single remaining avenue of relief as either unnecessarily time-consuming or exceptionally onerous."). At the time of the withdrawal, Plaintiffs were required to complete two more levels of internal appellate review. Even if the Plaintiffs were required to appeal a decision of "untimeliness," that decision would have been considered directly by the IEB on the second level, not return to the first. *See* (Affidavit of Rick Isaacson, Doc. No. 51-27 at 2); (Deposition of Troy Davis, Doc. No. 51-1 at 11-12). While Plaintiffs speculate that the process would take a long time, they assert no factual basis to support the allegation. *See Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1039 (6th Cir. 1989) ("[A] subjective belief [is] insufficient to excuse them from at least *attempting* to utilize the procedures.").

Further, Plaintiffs filed the complaint with this court in April 2015, and discussed the issue of exhaustion of remedies at the first case management conference in September 2015. Prior to learning of the withdrawal, just over a year had passed since the grievances were initially filed. I am not convinced that bypassing the internal appeals process by seeking premature judicial review was more expedient than actually complying with the procedure. There is no factual basis to support a finding that compliance with the internal union procedure would unreasonably delay judicial hearing on the merits.

4. Lack of Knowledge

Though not one of the *Clayton* factors, Plaintiffs move the court to excuse exhaustion on the grounds that they did not know, and their union representative failed to inform them of the internal appeals process available under the UAW Constitution. Courts have denied similar requests, holding "[s]imple ignorance is no excuse for failure to exhaust." *Rogers v. Bd. of Educ. of Buena Vista Sch.*, 2 F.3d 163, 167 (6th Cir. 1993). Plaintiffs had a duty to investigate and pursue the internal union

7

remedies available. *Monroe*, 723 F.2d at 25. The union representative need not inform the union member of the relief available and "the opinion of a union representative cannot be construed as a waiver of the UAW's constitutional appeal requirements." *Ryan v. Gen. Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir. 1989).

      Here, Plaintiffs assert that not only did the union representative fail to inform them of the internal appeal procedure in the UAW Constitution, but also told them that there was nothing more that could be done other than to file a lawsuit. Contrary to Plaintiffs' allegation, the union representative says that he told Plaintiffs of the right to appeal. (Doc. No. 51-2, 14-17). He states that he would have answered questions about the appeals process or assisted them, but that none of the Plaintiffs inquired about this option. *Id.* The minutes of the meeting where Plaintiffs were officially told of the withdrawal corroborate the union representative's testimony that he mentioned appeal in that open forum and no questions were asked about the process. (Doc. No. 51-2 at 29-30, Doc. No. 51-16 at 7). But even with an alleged misrepresentation, lack of information, or misunderstanding, Plaintiffs fail to overcome their own lack of diligence in educating themselves on the internal appeals procedure of the UAW Constitution. *See, e.g.*, *Rogers*, 2 F.3d at 167 (rejecting plaintiff's argument exhaustion should be excused because he did not know of his remedies under the union constitution and his union representative allegedly told him that the only option was to file a lawsuit and holding "The MEA Constitution is a written document, which plaintiff should have reviewed to ascertain his rights under it."). Consistent with other courts' holdings, I will not create a new factor to excuse exhaustion.

5.      Alternative Remedies

      Plaintiffs have failed to assert facts to excuse exhaustion. In their opposition brief, Plaintiffs requested that, if I found exhaustion could not be excused, I grant a stay during which they could exhaust their remedies. I do not find grounds to do so. In *Robins v. Fisher Body Div., Gen. Motors Corp.*, No. C-1-81-634, 1982 WL 31300 (S.D. Ohio May 6, 1982), the court held that since the

plaintiff could not show excuse for exhaustion, the court did not have subject matter jurisdiction over the matter and must dismiss rather than stay the action. Even absent any jurisdictional issue, Plaintiffs filed the complaint two years ago and learned that exhaustion of remedies was an issue in September 2015, at the case management conference. There is no evidence that Plaintiffs have attempted to comply with the internal appeals procedure since that time.

Since Plaintiffs failed to establish any excuse for exhaustion and have made no attempt to comply in the time this matter has been pending, summary judgment is granted to the Union Defendants on the breach of fair representation claim. In turn, FCA is also granted summary judgment on the § 301 claim since it is dependent on the claim against the union. *See Chapman*, 670 F.3d at 682 ("The employee must prove both claims to recover from either defendant."); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976) ("To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.").

B.      NLRA § 9(a)

In Count II, Plaintiffs asserted a claim against the union for breach of the duty of fair representation under § 9(a) of the NLRA. While Union Defendants did address Counts I and II together in their motion for summary judgment, as a matter of law, the claim is a "quintessential hybrid § 301 claim" requiring exhaustion.

The court has exercised jurisdiction over independent claims of breach of the duty of fair representation under the NLRA. But,

> In none of the cases in which this and other courts have asserted jurisdiction under 28 U.S.C. § 1337 over separate causes of action alleging breach of a union's duty of fair representation, however, has there been a colorable allegation that a collective bargaining agreement had been breached. Rather, in all of those cases, the principal issue joined by the controversy arose from circumstances rooted in the relationship existing between a union member and his union, rather than in the relationship existing between a union member, his union, and his employer as forged through a collective bargaining agreement

*White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 560-61 (6th Cir. 1990). Here, Plaintiffs asserted no new facts regarding the union's alleged breach of the duty of fair representation independent of those asserted with respect to the breach of the CBA. Since Plaintiffs' NLRA claim is derives from the same facts involving the union member, the union, and the employer, the NLRA claim is only an artfully pled hybrid § 301 claim. *See Young v. Int'l Union United Auto., Aerospace and Agric. Implement Workers of Am., Local 651*, -- F A'ppx --, No. 16-1632, 2017 WL 1363888, at *7 (6th Cir. April 12, 2017) (Because the employees raise a "colorable allegation" that GM breached a collective bargaining agreement, jurisdiction lies under § 301, and they cannot avoid having to show breach-of-contract by "artfully pleading" their claim as independent.") (citations omitted). Summary judgment is granted to Union Defendants as a matter of law.

C.   Common Law Fraud

Union Defendants also move for summary judgment on Plaintiffs' final claim of common law fraud, arguing that it is preempted by federal law. Plaintiffs failed to address the legal issue of preemption, but assert that summary judgment should not be granted because discovery has not been conducted on the issue. But Plaintiffs' state law claim is preempted since it is based on the same facts and duties as Plaintiffs' hybrid § 301 claim.

"The Union's duty of fair representation arises from the National Labor Relations Act itself." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 373 (1990). The breach of that federal duty is governed by federal law only, preempting all state law claims stemming solely from this duty. *See In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 173*, 983 F.2d 725, 728-29 (6th Cir. 1993) (citing *Maynard v. Revere Copper Prods., Inc.*, 773 F.2d 733, 735 (6th Cir. 1985)). Fraud is no exception. In *Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir. 1990), the court held that the plaintiff's claim of fraud was preempted because it derived from "the manner in which the Company and the Union carried out the CBA-defined process of reviewing her various grievances." 914 F.2d at 801-02. Other courts within the Circuit have followed this line of

10

reasoning, finding that state fraud claims based on alleged misrepresentations made by the union within the course of the grievance procedure were preempted by § 301. *See, e.g., Burklow v. Baskin-Robbins USA, Co.*, 274 F. Supp. 2d 899, 906 (W.D. Ky. 2003) ("[W]here a plaintiff's state law tort claim is based upon the same factual allegations as his federal claim for breach of the duty of fair representation, the state claim is effectively preempted by federal labor law."); *Kosa v. Int'l Union United Auto.*, 143 F. Supp. 3d 592, 608 (E.D. Mich. 2015) (same).

Here, Plaintiffs assert common law fraud under Ohio law based upon conduct the union allegedly engaged in during the grievance procedure. The facts asserted in support of the state law claim are the same as those stated in support of the § 301 claim of breach of the duty of fair representation. Contrary to Plaintiffs' assertion, this is a matter of law not fact. No discovery is required on this matter because the claim is preempted by federal law. Defendants are granted summary judgment on the Plaintiffs' final claim of common law fraud.

V. CONCLUSION

For the foregoing reasons, Defendants are granted summary judgment on all claims and Plaintiffs' request for a stay is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge